ERVIN, Judge,
concurring and dissenting.
I am in substantial disagreement with the views expressed by both my colleagues. I cannot agree with Judge Mills that a union is of a class different from any group to which meeting facilities have been previously rented, and that a union may be denied meeting space provided no union has been rented such space. St. Petersburg Junior College is, as defined by Section 447.203(2), a public employer and a public employer is specifically prohibited by Section 447.501(l)(b) from discouraging membership in any employee organization. As a governmental unit, St. Petersburg Junior College may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. Cox v. Louisiana, 379 U.S. 536, 581, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) (Black, J., concurring). Nor may it select which issues are worth discussing or debating in public facilities. “Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say.” Police Department v. Mosley, 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972) (e. s.).
*1106 While both Judge Smith and I are in agreement that a public employer may not deny a union the same privileges it has previously granted to others for the purpose of public communication, I must disagree with Judge Smith’s conclusion that the un-appealed finding stating “the meetings held during those times could have interfered with the program of the college . . . ” compels outright reversal of PERC’s order. To hinge the outcome of this case upon one isolated finding of fact, which was little more than an opinion expressed by the examiner, in my view places too much reliance on the one finding and excludes consideration of any of the remaining facts recited in the order clearly showing frustration of union activity by the public employer. For example, the president of SPJC, prior to the union’s request for rental of the room, had issued a memorandum to managerial employees advising that union activities were being conducted on the campus and they should be on the lookout for such activities. Additionally, a union organizer had been followed by SPJC supervisory personnel each time she came upon the campus, thereby preventing her from having access to college employees. Moreover, at the beginning of the organization drive, notices of union meetings were removed from campus bulletin boards; although the notices later were allowed to be posted. Finally the examiner found that during the drive, SPJC did not cooperate with CWA to facilitate its organizational tasks in that a list of employees was not given to CWA until after a law suit had been filed by the union.
Thus there was conflicting evidence before the hearing examiner from which he could have inferred that no unfair labor practice resulted from SPJC’s refusal to rent because potential disruption of classes might have resulted by the union’s holding organizational meetings during working hours. On the other hand there was ample evidence that an unfair labor practice occurred by SPJC’s refusal, which refusal was simply the culmination of other frustrating tactics employed by SPJC to thwart the union from soliciting its employees from membership in the union. Nevertheless the hearing officer did not enter his recommended order on the basis of these disputed facts, but solely upon the conclusion of law, now rejected by a majority of this court, that SPJC had the discretion to refuse the rental of available classroom space to CWA so long as it refuses to rent available classroom space to all other labor organizations.
Since both Judge Smith and I agree that the union’s intended conduct, i. e., communication for the purpose of soliciting union membership is protected, and that a public employer, once having granted rental privileges to others for the purpose of communication, may not deny the union the same privilege, it was necessary for the examiner to determine whether such protected conduct was the substantial or motivating factor in the decision made by the public employer in denying the rental request. Cf. Pasco County Sch. Bd. v. Fla. Public Employees Relations Commission, 353 So.2d 108 (Fla.1st DCA 1977). The hearing officer’s order never reached that question. Had he determined the decision of the employer was motivated by a non-permissible reason, i. e., anti-union bias, then the burden shifts to the employer to show by a preponderance of the evidence that notwithstanding the existence of factors relating to the union’s protected activity, the decision would have been reached despite the presence of a non-permissible reason. Pasco County Sch. Bd. v. Fla. Public Employees Relations Commission, supra, 120-122. These issues never having been decided, I would vacate the order of PERC and remand the case to the hearing officer to enter a recommended order based solely upon the evidence previously adduced at the hearing.